# J. S. COHEN v. GILBERT SEASHORE AND ANOTHER.
## GENEVA HANKINS, INTERVENER.
## GRACE RAYMOND v. GILBERT SEASHORE.
## GENEVA HANKINS, INTERVENER.[1]

May 16, 1924.

No. 23,970.

**Findings in actions of replevin sustained by evidence.**

1. Henry Hankins was killed while attempting to escape from police officers. He was identified as one of two men who had robbed the jewelry store of plaintiff Cohen of a number of diamond rings, also as one of two men who had robbed plaintiff Raymond of a pair of diamond earrings. Six diamonds were found on his body. *Held* that the evidence sustains the finding of the jury that two of these were the property of plaintiff Cohen, and another two the property of plaintiff Raymond.

**Plaintiff in replevin may waive money judgment for value of property.**

2. The party entitled to possession of property in an action of replevin may waive the right to an alternative judgment for its value.

**Exhibits properly sent to jury.**

3. The court properly permitted the jury to take all the exhibits in evidence to the jury room.

**Appellant not prejudiced by jury's finding.**

4. The fact that the jury found that the appellant was entitled to certain specified property not involved in the litigation was without prejudice to the appellant.

**Charge correct.**

5. There were no errors in the charge.

Two actions in the district court for Hennepin county for restitution of personal property or to recover the value thereof, $687 and $2,000, respectively. The defendant in both actions was coroner of Hennepin county. The intervener in both actions was the special

[1] Reported in 198 N. W. 1009.

administratrix of the estate of Henry Hankins, deceased. Complaints in intervention were interposed claiming that the administratrix owned all the property. The cases were heard together before Nye, J., who at the close of the testimony denied intervener's motions for directed verdicts, and a jury which returned verdicts in favor of plaintiff. From orders denying her motion for a new trial of the consolidated cases, intervener appealed. Affirmed.

*C. J. Cahaley* and *W. D. Scott*, for intervener.

*Denegre, McDermott, Stearns & Weeks, William M. Nash* and *Chester L. Nichols*, for respondents.

TAYLOR, C.

Actions to recover possession of stolen diamonds. In June, 1921, Henry Hankins was convicted at Des Moines, Iowa, of robbing a bank. Immediately after his conviction he and Geneva Wright were married. Accompanied by the sheriff, they went to her home ostensibly to inform her mother of the marriage. At the house he eluded the sheriff and escaped. In July, 1921, he came to Minnesota and Geneva joined him here. On July 20, 1921, two men entered the jewelry store of J. S. Cohen in the city of St. Paul, leveled revolvers at the clerk, seized a large number of diamond rings and escaped. In the evening of August 16, 1921, two men armed with revolvers entered the apartment of Grace Raymond in the city of Minneapolis and robbed her of a pair of diamond earrings. On August 17, 1921, Henry Hankins took a diamond to a jeweler in the city of Minneapolis and had it mounted in a gentleman's ring. When about to leave the store, he was arrested by police officers. On the way to the police station, he drew an automatic revolver and ran down the street shooting at the officers who pursued him. The officers also began shotting and he was killed. The coroner took possession of the body and found upon it 6 diamonds which are designated in the record as Exhibits A, B, C, D, E and F. The clerk in the Cohen store identified him as one of the bandits who had robbed that store.

Cohen brought an action in replevin against the coroner to recover exhibits A, B and D, claiming that they were three of the

diamonds stolen from him. Grace Raymond identified Hankins as one of the bandits who had robbed her, and brought an action in replevin against the coroner to recover Exhibits B and C, claiming that they were the diamonds stolen from her. Both claimed Exhibit B, but neither claimed Exhibits E or F. The coroner interposed an answer in each action to the effect that he merely held the property as coroner until the rightful owners should be determined; that another action had been brought for the same property; and that Geneva Hankins, the widow of Henry Hankins, had been appointed special administratrix of his estate and claimed all the property and effects found upon his body. Geneva Hankins, as such special administratrix, filed a complaint in intervention in each action asserting ownership of all the property involved therein. By consent the actions were tried together. The jury returned verdicts that plaintiffs Cohen was the owner and entitled to the possession of Exhibits A and D; that plaintiff Raymond was the owner and entitled to the possession of Exhibits B and C; and that the intervener was entitled to possession of Exhibits E and F. The intervener made a motion for a new trial in each action and appealed from orders denying these motions.

The intervener invokes the familiar rule that, in order to recover in an action of replevin, the plaintiff must establish his right to the possession of the specific property claimed, and insists that the plaintiffs failed to identify any of the diamonds as the specific diamonds stolen from them.

Plaintiff Cohen had a record of his diamonds. He had purchased the stones in the east unmounted and had mounted them himself. The jury found that he was the owner of Exhibits A and D. Exhibit A is the stone which Hankins took to the jeweler and had mounted on the day of his death. Cohen identified it by its weight, color and imperfections. The imperfections consisted of two black carbon spots and a scratch on the top. He admitted frankly, however, that there are many diamonds of the same weight and color and having the same imperfections, and that it was impossible to say positively from the examination that this was the identical stone stolen and not another similar one. Exhibit D was set in what is

termed a cup intended as the head of a scarf pin. Cohen identified this stone not only by its weight and color, but by the setting in which it still remained, and which he had made and was able to identify positively.

The jury found that plaintiff Raymond was the owner of Exhibits B and C. These stones were unmounted at the time they were taken from the body by the coroner. Plaintiff Raymond had purchased one of her earrings from one dealer and the other from another, and they differed slightly. She was positive that Exhibits B and C were her diamonds removed from their settings, but was unable to explain how she distinguished them from other similar diamonds further than to say that they were of the same size and appearance and differed from each other the same as those in her earrings, and had been found on the body of the man who had taken hers from her ears less than 24 hours before these were found. The dealer from whom she purchased the second earring stated that he had compared the two for the purpose of matching the first as nearly as he could, and that Exhibits B and C were of the same size and appearance and differed from each other the same as the stones in the earrings.

Exhibits A and D were found in the possession of the thief who had stolen Cohen's diamonds. Cohen identified Exhibit D positively by the setting. Exhibit A corresponded in all particulars to another of his diamonds stolen at the same time, and was the only diamond of that size or character found in the possession of the thief. Within 24 hours after Grace Raymond's diamonds had been stolen Exhibits B and C were found in the possession of the thief. They corresponded in size and appearance with those stolen from her, and were the only diamonds of that size or appearance found in the possession of the thief. We think the jury were fully justified in finding that Exhibits A and D were two of the diamonds stolen from Cohen and that Exhibits B and C were the two stolen from Grace Raymond.

The intervener contends that the verdicts are void for the reason that they are not in the alternative, for the recovery of possession of the property or of its value, if possession cannot be obtained,

but merely for the recovery of possession. There are several answers to this contention. The statute authorizing an alternative judgment for the value of the property in case the property itself cannot be obtained is for the benefit of the party to whom the property is awarded and may be waived by him. Stevens v. McMillin, 37 Minn. 509, 35 N. W. 372; Thompson v. Scheid, 39 Minn. 102, 38 N. W. 801, 12 Am. St. 619; New England F. & C. Co. v. Bryant, 64 Minn. 256, 66 N. W. 974. Neither of the plaintiffs complains of the form of the verdict, and the property itself is ready for delivery to those entitled to it. Furthermore the intervener is not in position to raise this question, for she has no interest in the property awarded to the plaintiffs and is not in possession of it.

The intervener cites no authority in support of her claim that the court erred in permitting the jury to take to the jury room Exhibits E and F not claimed by either plaintiff. They were exhibits in evidence and were properly submitted to the jury with the other exhibits.

It is true, as pointed out by the intervener, that Exhibits E and F were not involved in either action, and that the jury went beyond its province in assuming to determine that the intervener was entitled to the possession of them. But, as no one else is complaining, we fail to see any prejudice to the intervener.

The court gave the requests of the intervener as if they were a part of his charge in chief, and then remarked: "The last four statements are requests of the intervener in this case, and I give them as I have read them." The intervener complains of this remark. It might well enough have been omitted, but was not made in a manner to detract from the force of the statements given, and the charge taken as a whole was eminently fair to the intervener and above criticism.

The orders are affirmed.