**Erma WIDGREN, Respondent,**

v.

**Ben MASSIE, et al., and Zita Massie, a.k.a. Zita Kassen, d.b.a. Transportation Del Norte, Appellants,**

and

**Ben Massie, et al., Appellants,**

and

**Reserve Supply Company, Respondent.**

**Nos. C7–83–1712, C1–84–78.**

Court of Appeals of Minnesota.

June 12, 1984.

---

James M. Gammello, Pequot Lakes, for Ben Massie et al.

Patrick M. Krueger, Brainerd, for Widgren.

Karl K. Heinzerling, Minneapolis, for Reserve Supply Co.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG, and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This appeal by appellants is from two separate but related cases. The first case, heard in Cass County District Court, involved a determination of ownership to a 1975 semi-truck tractor. The trial court found in favor of respondent Widgren and awarded her damages for appellant's wrongful detention. Judgment was entered July 28, 1983. Appellant's motion for a new trial was denied August 31, 1983. Thereafter, appellant filed an appeal from

the judgment and order with this Court. Appellant did not, however, file a supersedeas bond to stay the trial court's decision pending appeal.

Pursuant to the Cass County judgment, respondent Widgren served two garnishment summonses on Reserve Supply Company, a customer of appellant's. Appellant sought to quash the garnishment due to a procedural defect in the first garnishment's service. The motion to quash was denied by the Anoka County District Court on January 3, 1984. Appellant filed a supersedeas bond staying the Anoka County District Court's order and appealed to this Court. We granted appellant's motion to consolidate both appeals on January 31, 1984.

## FACTS

Respondent Erma Widgren makes her home in Missoula, Montana. For seven of the past ten years she has made her living by driving semi-trucks. In August of 1982 she was driving a 1975 Kenworth flatbed truck for John Payovich. She was also in the process of buying the truck from Payovich. She made payments to him and he in turn paid the finance company.

Appellant Ben Massie owns a trucking company, Transportation Del Norte, located in Pine Bend, Minnesota. In September of 1982, a number of his drivers contacted respondent regarding driving for Transportation Del Norte. Respondent had previously worked for appellant during the last few months of 1974.

When the parties met, respondent allegedly urged appellant to buy a truck for her to drive. Appellant was not interested in purchasing another truck but was interested in obtaining respondent's services. They ultimately agreed that respondent would lease her truck and services to appellant's company. Under the lease, respon-

dent was to carry three to four rounds per month between Minnesota and Montana. In return, she would receive 80% of the gross revenue generated by each round.[1] Respondent was to retain possession of the truck and was solely responsible for its operating expenses.

After respondent had signed the lease agreement[2] she received a phone call from Associate Finance (Associate), the company financing purchase of the 1975 Kenworth flatbed. Payovich had not been making the installment payments so Associate was repossessing the truck. Respondent was instructed to deliver the truck to Allstate Sales and Leasing Corporation (Allstate), the company holding a recourse on the truck.

Respondent delivered the truck to Allstate. There she met with Mel Hokanson, Allstate's financing and leasing manager, in an effort to arrange purchase of the truck. She signed a purchase contract and made a $500 down payment on the truck. A week later she put an additional $4,205.38 down, but her credit application was denied so the sale was never completed.

Hokanson asked respondent if she knew anyone who would cosign with her or provide some collateral. Respondent testified she did not offer any names. Al Osterhauge, Allstate's assistant general manager, knew appellant personally and knew respondent had worked for appellant. He called appellant to see if appellant would help respondent purchase the truck. Appellant recalls receiving such a phone call from Osterhauge but maintains that respondent was the person who initially requested he cosign. Osterhauge told appellant that by cosigning he was assuming responsibility for the truck payments in the event respondent defaulted. Hokanson, however, recalls telling respondent that the

---

**1.** Appellant and his company split 10% of the gross of each round as a brokerage fee. The remaining 10% went to Transportation Del Norte for trailer rental.

**2.** Although the lease agreement is dated October 25th, it is undisputed that the agreement was made prior to repossession of the truck. Respondent testified she signed a blank lease agreement on October 3rd, prior to the repossession.

only way credit would be approved was if appellant was a co-buyer of the truck.

Appellant agreed to assist respondent. A security agreement, conditional sale contract, was signed on October 21, 1982 by both appellant and respondent. Respondent signed first and then appellant signed and wrote "co-buyer" after his name.

The certificate of title was issued by the state of Montana and contains appellant's and respondent's names. Respondent made the downpayment and was given possession of the truck. She was responsible for the costs of maintenance, insurance and license plates. She was also responsible for the monthly payments on the truck although Allstate says it looked to appellant for payment.

Respondent drove the truck for Transportation Del Norte from September 29, 1982 through January 11, 1983. During that time she made 9½ rounds between Minnesota and Montana. Her performance was not completely satisfactory. She was frequently late in making deliveries and refused to drive in weather conditions other drivers drove in. On at least one occasion she made a customer unload on the street rather than in the customer's drive-through yard. Reserve Supply, Transportation Del Norte's primary customer, requested respondent not be assigned to deliver their hauls.

On January 10, 1983 respondent called Transportation Del Norte from a truck stop just outside LaCrosse, Wisconsin and stated she was snowed in. About two hours after respondent called, two other drivers called from the same truck stop. Neither of these drivers saw any difficulty with the weather or road conditions. When they left the truck stop, respondent joined them and formed a mini-convoy. Respondent and one of the other drivers headed for Pine Bend and arrived at approximately 11:00 P.M. Unlike the other driver, however, respondent waited until January 11 to check in with the dispatcher's office.

When respondent did check in, appellant called her in to his office. Appellant told respondent he could no longer use her. He also stated his intention to retain the truck. While respondent was still in his office, appellant called Associate Finance to see if either of their names, preferably respondent's, could be removed from the sales contract and title.

When respondent left the office she headed for the truck. Appellant followed her and upon arriving at the truck removed the keys from the ignition. The parties dispute whether appellant pushed respondent aside in entering the truck and grabbing the keys.

Hours later, one of the other drivers drove respondent to town where she rented a room. She did not take her personal belongings out of the truck although appellant says the truck was unlocked at the time. When she finally obtained her belongings on January 22, some things were missing. Respondent has incurred significant lodging, food and transportation expenses since commencing this lawsuit.

The trial court determined that appellant signed the sales contract merely as an accommodation party. As such, appellant's detention and use of the truck was adjudged unlawful. A judgment for respondent was issued and entered on July 28, 1983. Appellant did not file a supersedeas bond staying the judgment pending this appeal.

Respondent exercised her rights as a judgment creditor by garnishing appellant's accounts receivable from respondent Reserve Supply Company (Reserve). The garnishment summons served on Reserve on November 17, 1983 was defective, however, because appellant was not served notice of the garnishment. Upon discovery of the defect, respondent Widgren served Reserve a release of the garnished account. Simultaneously, Widgren served Reserve with a second garnishment summons. Appellant received notice of 'the second garnishment. Appellant moved to quash the garnishment due to the procedural defect of the first garnishment summons. The motion was denied.

## ISSUES

1. Whether the trial court's finding with respect to the parties' respective interests in the semi-truck was clearly erroneous.

2. Whether the remedy awarded by the trial court is legally permissible.

3. Whether the evidence justifies the damage award.

4. Whether the trial court erred in denying appellant's motion to quash the garnishment.

## ANALYSIS

1. In the order and judgment dated July 28, 1983, the trial court made one finding with respect to the agreement to purchase the semi-truck. Finding VI states in part:

> Plaintiff and Massie signed the purchase agreement, which was also a security agreement. It was clearly understood by all parties to the agreement, including Allstate and Massie, that Massie was signing only as an accommodation to plaintiff, that plaintiff was to have possession of the truck, be responsible for payments and maintenance, and that the certificate of title would be a Montana certificate possessed by plaintiff. Massie advised Allstate of the lease agreement, and promised Allstate that plaintiff would be able to work pursuant to the lease agreement until the truck obligation was paid in full.

In reviewing this finding, the court is guided by Rule 52.01 of the Minnesota Rules of Civil Procedure. In relevant part, the rule provides:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*Id.* Interpreting this language, the Minnesota Supreme Court has held that "to overturn a trial court's findings, [the] court must be left with a definite and firm conviction that a mistake has been made, notwithstanding the evidence to support such findings." *Cherne Industrial Inc. v.*

*Grounds & Associates,* 278 N.W.2d 81, 88 (Minn.1979); *see also Hilton v. Nelsen,* 283 N.W.2d 877, 881 (Minn.1979) (factual findings reasonably supported by the evidence are not clearly erroneous).

 Respondent initially sought to purchase the truck from Allstate herself. She signed a purchase contract and made a down payment. Not until her credit application was rejected was there any discussion about engaging a third party to assist in the purchase. Respondent also made the payments, maintained the truck and retained the full fee from leasing the truck to Transportation Del Norte. The only evidence that appellant signed the contract for an ownership interest is the designation "co-buyer" which he inserted after his signature. This alone does not preclude finding he signed the contract as an accommodation party. Cf. *LeRoy v. Marquette National Bank of Minneapolis,* 277 N.W.2d 351, 354 (Minn.1979) (it is well established in Minnesota law that a co-maker of a promissory note may be an accommodation party). The trial court's finding that appellant signed the contract to accommodate respondent is reasonably supported by the evidence and is not clearly erroneous.

2. Having resolved the respective status of the parties under the contract, the trial court awarded respondent damages for appellant's detention of the truck. The court determined respondent had commenced an alternative action for replevin or conversion and it was not "practical" to require appellants to return the truck to respondent. The finding that respondent commenced an alternative action was clearly erroneous and the award of damages based on the impracticability of requiring return of the truck constitutes an error of law.

### (A) *Respondent's cause of action.*

Conversion and replevin are two separate causes of action for a wrongful detention of personal property. "[T]he object of the [conversion] action is to recover damages, not to regain possession of the thing itself." *Carpenter v. American Building*

*& Loan Ass'n.*, 54 Minn. 403, 410, 56 N.W. 95 (1893). Replevin, on the other hand, is the appropriate means to recover possession of specific personal property—of definite things. The action is a possessory one and has in some of our cases been said to be akin and similar in its purpose and effect to actions in ejectment to recover possession of real estate. In both, it is a means of trying title to property. In both, the judgment, "in effect if not in form, determines the title" to the property involved. It is an appropriate form of action in which to determine which of two contending parties is the owner.

*Seebold v. Eustermann*, 216 Minn. 566, 577, 13 N.W.2d 739, 745 (1944), rev'd on other grounds, *Utterberg v. Cameron*, 282 N.W.2d 536, 537 (Minn.1979).

■ Respondent's complaint and amended complaint both request return of the truck. Paragraph VIII of the amended complaint reads in part:

WHEREFORE, Claimant demands judgment against Respondents, and each of them, for the immediate return and possession of the property described or for the sum of Twenty Seven Thousand Four Hundred Ninety and 59/100 ($27,-490.59) Dollars, the actual value thereof, in case delivery thereof cannot be had.

Since respondent seeks recovery of the truck, her action is a replevin, not conversion action.

Respondent does not dispute the distinct nature of replevin and conversion actions. Instead, she argues her pleadings should be construed to be a claim for replevin or conversion.

It is settled law that pleadings must be construed liberally in order to prevent errors in draftsmanship or the like from barring justice to litigants. Such pleadings must be construed favorably to the pleader and judged by substance rather than form. The Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), said:

"Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Mutual Creamery Insurance Company v. Iowa National Mutual Insurance Company*, 427 F.2d 504, 507–08 (8th Cir.1970).[3]

Respondent's complaint and amended complaint uses neither the term conversion nor replevin but rather wrongfully detained: The substance of the pleadings, however, request return of the truck. Such a request makes her case a replevin action. There was no basis for the trial court's finding that respondent pled in the alternative pursuant to Rule 8.05(2) of the Minnesota Rules of Civil Procedure.

(B) *The appropriate remedy in a replevin action.*

■ Minn. Stat. § 548.04 (Supp.1983) contains the remedies available in a replevin action. The statute states in part:

In an action to recover the possession of personal property, judgment may be rendered for the plaintiff and for the defendant, or for either. Judgment for either, if the property has not been delivered to him, and a return is claimed in the complaint or answer, may be for the possession or the value thereof in case possession cannot be obtained, and damages for the detention, or the taking and withholding.

*Id.* Construing this statute, our Supreme Court said:

We have repeatedly held that this statute controls the form of the judgment and, *where the prevailing party is not in possession of the property, judgment*

---

**3.** Rule 8.06 Minn.R.Civ.P. is identical to Rule 8(f) of the Federal Rules.

*must be entered in the alternative for the possession of the property or for its value where recovery is not possible.* It is doubtful in this state whether the alternative judgment can be dispensed with even where it clearly appears to the trial court that the property has been irretrievably lost and is not subject to recovery. The question was discussed but not decided in *New England Furniture & Carpet Co. v. Bryant,* 64 Minn. 256, 260, 261, 66 N.W. 974, 975, 976, where Mr. Justice Mitchell concluded, and properly so, that failure to enter an alternative judgment, even where it is clearly shown that the property is not recoverable, "is liable to result in serious practical difficulties" and should be avoided.

*Bogestad v. Bothum,* 248 Minn. 198, 202, 79 N.W.2d 371, 375 (1956) (emphasis added).

In the present case, respondent was determined to be the party entitled to possession of the truck. Appellants had possession of the truck and could have turned it over had they been ordered to. We respect the trial court's determination that practical problems regarding the truck's condition would arise from transferring its possession. These practical problems, however, are inherent in every transfer of depreciable property pursuant to a replevin judgment. Minn. Stat. § 548.04 is clear and unambiguous. Possession of the personalty itself must be ordered when possible. Since appellants have the truck and could return it to respondent they should have been ordered to return it. The failure to award possession to respondent contravened Minn. Stat. § 548.04 and constituted an error of law.

3. The trial court awarded respondent $28,016.00 in present damages. The components of the award are as follows:

$8,535.00 for respondent's equity in the truck.

275.00 for interest on respondent's equity through the date of judgment.

18,900.00 for respondent's lost wages through the date of judgment.

305.00 for interest on respondent's lost wages through the date of judgment. The court also awarded respondent future damages of $700 per week plus interest until such time as appellants pay the judgment.

(A) *Present damages.*

We have already determined that respondent's complaints plead a replevin cause of action. As such, her remedies are possession of the truck, if it is available, and damages for the detention or taking and withholding. Minn. Stat. § 548.04 (Supp. 1983). The truck is available so the $8,810.00 of damages attributable to respondent's equity in the truck cannot stand.

■ With respect to damages for detention or taking and withholding, the Minnesota Supreme Court has said:

[i]f the property has a usable value the reasonable value of its use during its wrongful detention may be recovered if properly pleaded and proved.

*Berquist v. The Stetson Company,* 194 Minn. 480, 483, 260 N.W. 871, 873 (1935) (quoting 5 Dunnell's Digest § 8420 (2nd Ed. & Supp.)). The reasonable value of the truck's use during the wrongful detention does not include respondent's lost wages for that period. Rather it pertains to the reasonable rental value of a similar truck for the period of detention. While respondent is entitled to damages in an amount equaling the reasonable rental value, the award attributable to her lost wages was in error. Since the record is silent on the truck's rental value, the case must be remanded for such a determination.

(B) *Future damages.*

■ Minn.Stat. § 584.04 (Supp.1983) does not provide for an award of future damages. Additionally, the fact that respondent may have had a claim for punitive damages is not relevant since she did not request those damages. The damages awardable in a replevin action are those prescribed by statute. The award of future damages must be stricken.

4. Minn. Stat. § 571.42, subd. 1 (Supp.1983) provides that:

> Except as provided in sections 571.43 and 571.50, service of the garnishee summons upon the garnishee shall attach and bind, to respond to final judgment in the action, all personal property of the judgment debtor in his possession or under his control and all indebtedness owing by him to the judgment debtor at the time of service and all nonexempt disposable earnings earned or to be earned within that pay period and within 30 days thereafter.

*Id.; see also Northwestern National Bank v. Delta Studios, Inc.,* 289 Minn. 202, 205, 184 N.W.2d 3, 4 (1971).

It is undisputed that the garnishee, Reserve Supply, owed appellants money at the time the first garnishment summons was served. Respondent admits, however, that garnishment summons was defective. When respondent served garnishee the release from the defective garnishment, respondent simultaneously served a second garnishment summons.

While it is true that garnishment is essentially a statutory remedy and in the absence of statute would not exist, *Gustafson v. Johnson,* 235 Minn. 358, 373, 51 N.W.2d 108, 116 (1952), it is equally true that "a garnishment statute is remedial and should be liberally construed ...." *Rintala v. Shoemaker,* 362 F.Supp. 1044, 1048 (D.Minn.1973) (citing *Swedish-American Nat'l Bank v. Bleecker,* 72 Minn. 383, 388, 75 N.W. 740, 741 (1898)). On this record, we hold that upholding the second garnishment summons is consistent with both the statute and the purpose and policy behind the statute.

Respondent served the summonses pursuant to a valid judgment. She did not serve summonses willy-nilly but rather served one company that was in fact indebted to appellant. Immediately upon discovery of the first summons' defectiveness, respondent served a release from garnishment on the garnishee. Each of these actions was taken in a good faith attempt to comply with the statute. Had a deliberate attempt to circumvent the statute been shown, our decision would be different. Service of the second garnishment summons simultaneous to release of the original garnishment, by itself, does not constitute an abuse of the statutory remedy requiring quashing of the summons.

## DECISION

The trial court's finding with respect to the ownership of the semi-truck is affirmed. The recovery ordered pursuant to that finding, however, is contrary to Minn. Stat. § 548.04 (Supp.1983) and is reversed. The case is remanded for determination of damages permissible under Minn. Stat. § 548.04. The order denying appellant's motion to quash the garnishment summons is affirmed.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.